

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Aguadilla Paint Center, Inc.; CB Gasoline Service Group; Micada de Puerto Rico, Inc.<br><br>Recurridos<br><br>v.<br><br>Esso Standard Oil, Co. (Puerto Rico)<br><br>Peticionario | Certiorari<br><br>2011 TSPR 194<br><br>183 DPR ____ |

Número del Caso:  CC-2010-1135

Fecha: 15 de diciembre de 2011

Tribunal de Apelaciones:

      Región Judicial de Bayamón, Panel VI

Panel integrado por su presidenta, la Juez García García, la Jueza Varona Méndez y la Juez Gómez Córdova

Abogados de la Parte Peticionaria:

      Lcdo. Salvador Antonetti Stutts
      Lcdo. Carlos Valldejully Sastre
      Lcdo. Carlos J. Sagardía Abreu
      Lcda. Carla Framil Ferrán
      Lcdo. Pedro A. Delgado Hernández

Abogado de la Parte Recurrida:

      Lcdo. Juan A. Ramos Díaz

Oficina de la Procuradora General:

Lcda. Amir Cristina Nieves Villegas
Procuradora General Auxiliar

      Materia: Ley de Monopolios ("Ley 77"); Ley de Gasolina ("Ley 3"); Daños y Perjuicios

      Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Aguadilla Paint Center, Inc.;
CB Gasoline Service Group;
Micada de Puerto Rico, Inc.

    Recurridos

      v.                  CC-2010-1135      Certiorari

Esso Standard Oil Company,
(Puerto Rico)

    Peticionario

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

San Juan, Puerto Rico, a 15 de diciembre de 2011.

En esta ocasión la controversia que nos ocupa es relativamente sencilla: ¿tiene legitimación activa una persona privada, detallista de gasolina, para presentar una causa de acción ante el Tribunal de Primera Instancia contra un distribuidor-mayorista de ese producto por alegadas violaciones a las disposiciones relativas al deber de desvinculación operacional que establece el Art.

4A de la Ley de Control de Productores, Refinadores y Distribuidores-Mayoristas de Gasolina?[1] Al atender

---

[1] 23 L.P.R.A. sec. 1104a.

tal interrogante, interpretamos por primera vez de forma conjunta dos estatutos que regulan la competencia en el mercado de gasolina, a saber: la Ley de Control de Productores, Refinadores y Distribuidores-Mayoristas de Gasolina, Ley Núm. 3 de 21 de marzo de 1978, según enmendada, 23 L.P.R.A. sec. 1101 *et seq.* (Ley de Gasolina), y la Ley de Monopolios y Restricción del Comercio, Ley Núm. 77 de 25 de junio de 1964, según enmendada, 10 L.P.R.A sec. 257 *et seq.* (Ley de Monopolios).

# I

La peticionaria Esso Standard Oil Company (la peticionaria o Esso) es una corporación dedicada a la importación, distribución y venta de gasolina al por mayor, o sea, un distribuidor-mayorista.[2] Por su parte, las recurridas Aguadilla Paint Center, Inc., y CB Gasoline Service Group, Inc. (las recurridas) son detallistas,[3] o sea, vendedores al detal de gasolina, en este caso gasolina importada, distribuida y vendida por la peticionaria Esso (detallistas de marca).

Para agosto de 2004, las recurridas presentaron una demanda ante el tribunal de instancia en la que imputaron a

---

[2] Véase Art. 1(f) de la Ley de Gasolina, *supra*, 23 L.P.R.A. sec. 1101(f).

[3] Véase Art. 1(g) de la Ley de Gasolina, *supra*, 23 L.P.R.A. sec. 1101(g).

la peticionaria Esso, *inter alia*, incurrir en la práctica de vinculación operacional, en contravención al Art. 4A de la Ley de Gasolina, *supra,* y al Art. 7 de la Ley de Monopolios.[4] Además, solicitaron resarcimiento en daños y perjuicios, según el Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141.

Luego de múltiples incidentes procesales,[5] el 12 de marzo de 2010 Esso solicitó la desestimación de la demanda al amparo de la Regla 10.2 de Procedimiento Civil.[6] En su moción, Esso argumentó básicamente que la causa de acción de las recurridas, fundada en la obligación de "desvinculación operacional" que establece el Art. 4A de la Ley de Gasolina, *supra*, debía ser desestimada porque el Art. 8 de la Ley de Gasolina, 23 L.P.R.A. sec. 1108, establece que una violación al Art. 4A "constituirá una práctica o acto injusto o engañoso y estará sujeto a las disposiciones de las secs. 257 et seq." de la Ley de Monopolios, *supra*.

_____

[4] 10 L.P.R.A. sec. 263.

[5] **El 1 de octubre de 2004, Esso solicitó por primera vez la desestimación de la demanda, basado en que el Art. 4 de la Ley de Gasolina desplazaba la aplicación del Art. 7 de la Ley de Monopolios (caso DAC2005-0343). Sin embargo, el Tribunal de Primera Instancia denegó la solicitud de desestimación, por lo que Esso recurrió ante el Tribunal de Apelaciones (caso KLCE2005-00564). El Tribunal de Apelaciones denegó la expedición del auto mediante "Resolución" de 26 de mayo de 2005. Entonces, Esso recurrió ante este Tribunal mediante *certiorari*, el cual denegamos el 10 de noviembre de 2005. Tal determinación advino final y firme, continuando así los procedimientos ante el Tribunal de Primera Instancia.**

[6] 32 L.P.R.A. Ap. III, R. 10.2.

El tribunal de instancia declaró no ha lugar la solicitud de desestimación de Esso, al concluir "que un ente privado como la demandante puede presentar una acción al amparo del Artículo 7 de la [Ley de Gasolina, 23 L.P.R.A. Sec. 1107] sobre competencia en el mercado de gasolina, ante el Tribunal de Primera Instancia".[7] Inconforme, Esso recurrió ante el Tribunal de Apelaciones mediante recurso de *certiorari*. Dicho foro concluyó que, luego de un análisis ponderado del recurso presentado y los documentos que obraban en el expediente, Esso no lo había colocado en condiciones de conceder el remedio solicitado y que el dictamen recurrido no ameritaba su intervención en esa etapa procesal.

Ante tal dictamen, Esso acudió ante esta Curia mediante recurso de *certiorari* esbozando los siguientes señalamientos de error:

> Erró el Tribunal de Apelaciones al no expedir el auto solicitado y reconocer que el Art. 12(a) de la Ley de Monopolios excluye demandas privadas por alegada vinculación operacional bajo el Art. 4A de la Ley de Gasolina.

> Erró el Tribunal de Apelaciones al no expedir el auto solicitado y no ordenar la desestimación de la reclamación bajo el Art. 4A de la Ley de Gasolina, ya que los demandantes no tienen legitimación activa para incoarla y, por lo tanto, el Tribunal de Primera Instancia carece de jurisdicción sobre la materia para atenderla.

---

[7] Véase Apéndice de la Petición de *certiorari*, pág. 179.

> Erró el Tribunal de Apelaciones al determinar que Esso no lo colocó en "condiciones de conceder el remedio solicitado", ya que se cumplen los criterios para la expedición del auto contenidos en la Regla 40 del Reglamento del Tribunal de Apelaciones.

Expedido el *certiorari,* paralizamos los procedimientos y ordenamos a las partes presentar sus correspondientes alegatos.[8] Con el beneficio de la posición de todas las partes, resolvemos.

## II

**A. *Ley de Control de Productores, Refinadores y Distribuidores-Mayoristas de Gasolina***

Según surge de su Exposición de Motivos, la aprobación de la Ley de Control de Productores, Refinadores y Distribuidores-Mayoristas de Gasolina, Ley Núm. 3 de 21 de marzo de 1978, según enmendada, 23 L.P.R.A. sec. 1101 *et seq.*, tuvo como propósito –entre otros- combatir el problema "que representa el que el control de los abastos de productos energéticos y, en especial, la gasolina y otros combustibles derivados del petróleo y del gas natural, continúe concentrándose en las manos de unos pocos que dominan todos los aspectos relacionados con la producción, refinación y mercadeo de estos productos".[9] De

---

[8] También ordenamos a la Procuradora General de Puerto Rico que compareciera y expresara su posición sobre la controversia, en carácter de A*micus Curiae;* la Procuradora General así lo hizo.

[9] Véase Exposición de Motivos de la Ley de Gasolina, *supra.*

manera que el legislador buscó eliminar las ventajas competitivas existentes en el mercado de la gasolina o combustibles especiales de motor, así como disponer sobre la supervisión de ese proceso y establecer medidas para el cumplimiento de los propósitos perseguidos por dicho estatuto. A tenor con este fin, el legislador tipificó delitos y fijó penalidades a los infractores del estatuto.

De esta manera, la Asamblea Legislativa determinó que, ante la falta de uniformidad competitiva, era necesario instituir salvaguardas minuciosas que impidieran las actuaciones de las compañías petroleras y distribuidoras de productos energéticos dirigidas a monopolizar los puntos de distribución pública de gasolina.[10] Además, la Ley de Gasolina persigue proteger la industria de la venta de combustible al detal de toda práctica discriminatoria que pretenda eliminar al detallista individual de gasolina de la competencia del mercado, así como también de aquellas prácticas discriminatorias y de control sobre la estructura de precios dirigidas a favorecer a unos detallistas en perjuicio de otros y del consumidor.[11]

Por otro lado, apenas unos meses después de aprobada la Ley de Gasolina, la Legislatura aprobó -a manera de

---

[10] Véase Exposición de Motivos de la Ley de Gasolina, *supra*.

[11] Íd.

*addendum* a esta última- la Ley Núm. 73 de 23 de junio de 1978, según enmendada, 23 L.P.R.A. sec. 1131 *et seq.* (Ley Núm. 73), dirigida a la "Reglamentación y Control de la Industria de la Gasolina". Con la aprobación de la Ley Núm. 73 se declaró "la industria de la gasolina en todas sus facetas como una revestida de interés público".[12] Al así hacerlo se reconoció que la industria de la gasolina constituye un elemento fundamental para la seguridad y el bienestar del pueblo de Puerto Rico. Esto debido a que de la disponibilidad de ese producto dependía en gran medida en aquel entonces –y evidentemente continúa siendo así en la actualidad– el normal funcionamiento de nuestra economía y el continuo desarrollo de las actividades cotidianas del País.[13]

Cónsono con la Ley de Gasolina, el propósito de la Ley Núm. 73 es regular de manera efectiva ciertos aspectos de la industria de la gasolina y así asegurar que los intereses del pueblo de Puerto Rico estén adecuadamente protegidos de actividades perjudiciales que tengan lugar en cualquiera de los distintos niveles operacionales de esa industria.[14] Al así actuar, el legislador señaló que es al

---

[12] 23 L.P.R.A. sec. 1131.

[13] Véase la Exposición de Motivos de la Ley de Reglamentación y Control de la Industria de la Gasolina, Ley Núm. 73 de 23 de junio de 1978, según enmendada, 23 L.P.R.A. sec. 1131 *et seq.* (Ley Núm. 73).

[14] Véase la Exposición de Motivos de la Ley Núm. 73, *supra.*

Gobierno al que le compete asegurar que exista una situación estable dentro de toda actividad que afecte el bienestar general de la ciudadanía, así como asegurar el buen orden de la comunidad y la protección de los mejores intereses del sistema económico y gubernamental.[15]

Con el fin de cumplir con sus propósitos, la Ley Núm. 73 estableció ciertas obligaciones y prohibiciones que se detallan en su Art. 3.[16] Entre ellas y a manera de ejemplo, se prohíbe que en las relaciones entre distribuidores-mayoristas y detallistas existan simultáneamente contratos de arrendamiento y subarrendamiento (*lease and lease-back*), cuando dicha relación tenga el efecto o el propósito de cancelar la obligación del pago entre las partes o de restringir irrazonablemente el derecho a la libre contratación o a la disposición de la propiedad.[17] Además, la Ley Núm. 73 estableció la obligación a todo distribuidor-mayorista de presentar en la Oficina de Asuntos Monopolísticos (O.A.M.)[18] una copia legible de todo contrato en el que se establezca una relación comercial con un detallista, dentro de los

---

[15] Véase la Exposición de Motivos de la Ley Núm. 73, *supra*.

[16] 23 L.P.R.A. sec. 1131.

[17] 23 L.P.R.A. sec. 1133(a).

[18] Como detallaremos más adelante, la Oficina de Asuntos Monopolísticos (O.A.M.) es una entidad adscrita al Departamento de Justicia, con facultades para la administración de la legislación sobre prácticas monopolísticas, así como para la fiscalización de éstas.

diez días siguientes a su formalización, así como toda enmienda o modificación subsiguiente a éste.

Conjuntamente, y para asegurar el cumplimiento de sus objetivos y propósitos, la Ley Núm. 73 facultó a varias agencias gubernamentales y les impuso la responsabilidad de realizar diversas funciones. Entre esas agencias se encuentran el Departamento de Comercio,[19] la Comisión de Servicio Público, la Junta de Planificación, la Administración de Reglamentos y Permisos y el Departamento de Asuntos del Consumidor (D.A.Co.).[20]

Finalmente, es menester considerar lo que establece el Art. 5 de la Ley Núm. 73 con relación a la Ley de Monopolios, *supra*:

### § 1134 Aplicación de la Ley de Monopolios

Nada de lo aquí dispuesto o promulgado por reglamento o de otra forma, conforme a las disposiciones de las secs. 1131 a 1135 de este título, será interpretado como que exceptúa de o confiere inmunidad en cuanto a la aplicabilidad de las disposiciones de las secs. 257 a 274 del Título 10.[21]

En resumen, es evidente que desde sus inicios tanto la Ley de Gasolina como su *addendum,* la Ley Núm. 73, dispusieron no sólo para la protección de la industria de venta de combustible al detal de toda práctica

---

[19] Actualmente Departamento de Desarrollo Económico y Comercio.

[20] 23 L.P.R.A. secs. 1133(c)-1133(h).

[21] 23 L.P.R.A. sec. 1134.

discriminatoria en perjuicio de los mejores intereses del pueblo de Puerto Rico, sino que reconocieron expresamente la injerencia de la Ley de Monopolios, *supra*, en tal proceso. Así, ambas leyes dispusieron para que la actuación del Departamento de Justicia de Puerto Rico, a través de su O.A.M., fuera una cardinal en el cumplimiento de sus disposiciones fiscalizadoras. Además, el legislador dispuso para que otras agencias gubernamentales, tales como el D.A.Co., tuvieran también participación.

A tono con todo lo anterior, el Art. 2(a) de la Ley de Gasolina, *supra*, 23 L.P.R.A. sec. 1102, establece que:

> ... ningún productor, refinador o distribuidor-mayorista adquirirá o establecerá, abrirá, operará o recobrará para operar estación alguna de servicio de venta al detal de gasolina para ser operada con personal de su propia compañía o empresa subsidiaria, agente, agente por comisión, o bajo contrato con alguna persona natural o jurídica, que opere o administre dicha estación de servicio de venta al detal mediante convenio o arreglo remunerado con dicho productor, refinador o distribuidor-mayorista. La estación de servicio de venta de gasolina sólo podrá ser operada por un detallista.

Asimismo, el Art. 4 de la Ley de Gasolina, *supra*, 23 L.P.R.A. sec. 1104, establece que:

> [t]odo productor o refinador de petróleo o distribuidor-mayorista de productos de petróleo que supla gasolina y/o combustibles especiales a estaciones de servicio para la venta al detal de dichos productos estará obligado a proveer uniformemente a todos los detallistas de venta de gasolina y/o combustibles especiales a quienes supla, todo descuento, deducción, disminución o

rebaja en precios que conceda de forma directa o indirecta.[22]

Ahora bien, relacionado directamente a la controversia que nos ocupa, analizamos el Art. 4A de la Ley de Gasolina, *supra*, el cual dispone lo siguiente:

### § 1104a Desvinculación operacional

Ningún refinador, productor de petróleo o distribuidor-mayorista podrá, mediante convenio, arreglo, contrato, esquema corporativo operacional, con cualquier detallista y/o persona natural o jurídica, o de cualquier otra forma operar directamente una estación de servicio de venta al detal de gasolina de forma que impida su completa desvinculación operacional. Ningún refinador, productor de petróleo o distribuidor-mayorista podrá, mediante convenio, arreglo, contrato, esquema corporativa [sic] operacional, con cualquier detallista y/o persona natural o jurídica, o de cualquier otra forma imponer, requerir, fijar o limitar directamente el margen de ganancia y/o el precio de venta al detal de la gasolina y/o combustibles especiales en la estación de servicio de venta al detal.

---

[22] Por su parte, el Art. 5 de la Ley de Gasolina, *supra*, 23 L.P.R.A. sec. 1105, dispone para que todo productor o refinador de petróleo o distribuidor-mayorista de productos de petróleo que supla gasolina o combustibles especiales a detallistas, le aplique uniformemente a todos los vendedores al detal a quienes supla, de la renta de equipos y rótulos, cuando de una forma directa o indirecta éstos sean provistos a dichos detallistas por ese productor, refinador o distribuidor-mayorista.

Mientras, el Art. 6 de la Ley de Gasolina, *supra*, 23 L.P.R.A., sec. 1106, ordena la distribución uniforme de combustible en periodos de escasez o disminución en el abasto o disponibilidad de gasolina o de combustibles especiales. El Art. 7 de la mencionada Ley prohíbe que un vendedor al detal de combustible, a sabiendas, solicite o induzca la concesión, o rebaja en precios o en la renta de equipos y rótulos, en violación a los Arts. 4 y 5 de la Ley de Gasolina, 23 L.P.R.A. sec. 1107.

El Art. 4A de la Ley de Gasolina, *supra*, es el resultado de una enmienda que se hiciera a este estatuto mediante la Ley Núm. 157 de 21 de agosto de 1996 y otra enmienda al propio artículo –que añade la segunda oración– mediante la aprobación de la Ley Núm. 74-2005. El artículo establece la "desvinculación operacional" o, lo que es lo mismo, prohíbe la llamada "vinculación operacional" de los mayoristas de gasolina con las estaciones de venta al detal. La Ley Núm. 157 también enmendó la Ley de Gasolina para establecer que "desvinculación operacional" es el cese por parte de un refinador, productor de petróleo o distribuidor-mayorista "de participar en forma directa en la operación o actividades de intercambio comercial de la venta al detal de gasolina y combustibles especiales en las estaciones de servicio de venta al detal".[23]

De otra parte, y cardinal a la controversia que nos ocupa, debemos considerar también el Art. 8 de la Ley de Gasolina, el cual dispone lo siguiente:

> **§ 1108 Violación de competencia justa**
>
> Cualquier violación a las secs. 1102, 1102a, 1104, **1104a**, 1105 y 1105a de este título **constituirá una práctica o acto injusto [o] engañoso y estará sujeto a las disposiciones de las secs. 257 et seq. del Título 10.**[24] (Énfasis suplido.)

---

[23] 23 L.P.R.A. sec. 1101(j).

[24] 23 L.P.R.A. sec. 1108.

El Art. 8 de la Ley de Gasolina, *supra*, está dirigido a dos fines íntimamente ligados. En primer lugar, instaurar como "práctica o acto injusto o engañoso" toda violación a los Arts. 2, 2A, 4, **4A**, 5 y 5A de la Ley de Gasolina. En segundo lugar, **establecer que cualquier violación a los artículos mencionados estará sujeta a lo dispuesto en la Ley de Monopolios**, *supra*. Complementando esta disposición, el Art. 10 de la Ley de Gasolina dispone que "[e]l cumplimiento de los propósitos y las disposiciones de las secs. 1101 a 1110 de [la Ley de Gasolina] será responsabilidad del Secretario de Justicia, por conducto de la Oficina de Asuntos Monopolísticos de dicho Departamento".[25]

En su versión original, el Art. 8 de la Ley de Gasolina, *supra*, leía de la siguiente manera:

> Cualquier violación a los Arts. 4, 5, 6 y 7 constituirá una práctica o acto injusto o engañoso y estará sujeto a las disposiciones del Artículo 3 de la Ley Núm. 77 de 25 de junio de 1964.[26]

Nótese que este artículo originalmente hacía referencia a violaciones al Art. 4 de la Ley de Gasolina, *supra*, el cual establece la obligación de todo productor o refinador de petróleo o distribuidor-mayorista de productos

---

[25] 23 L.P.R.A. sec. 1110.

[26] Art. 8 de la Ley Núm. 3 de 25 de marzo de 1978.

de petróleo de proveer uniformidad en todo descuento, deducción, disminución o rebaja en precios, a los detallistas; violaciones al Art. 5, el cual establece la obligación de todo productor o refinador de petróleo o distribuidor-mayorista de productos de petróleo de proveer uniformidad en la renta de equipos y rótulos a los detallistas; y violaciones al Art. 6, el cual establece la obligación de todo productor o refinador de petróleo o distribuidor-mayorista de productos de petróleo de instaurar un prorrateo indiscriminado y una distribución uniforme entre todos los detallistas a quienes supla gasolina para la venta, durante tiempos de escasez, o disminución en el abasto o disponibilidad de gasolina o de combustibles especiales. Por otro lado, el Art. 8 en su versión original también hacía referencia a violaciones al Art. 7, el cual establece una prohibición al detallista de solicitar o inducir la concesión o rebaja en precios en la renta de equipos y rótulos. Como puede percibirse, cada disposición a la cual el Art. 8 en su versión original hacía referencia –Arts. 4 al 7- contenía una prohibición cuya violación, constituía "una práctica o acto injusto o engañoso".

Ahora bien, desde su redacción original el Art. 8 de la Ley de Gasolina, *supra*, ha sufrido dos enmiendas. La primera de ellas mediante la aprobación de la Ley Núm. 157 de 21 de agosto de 1996 (Ley Núm. 157), la cual en su Exposición de Motivos señalaba lo siguiente (haciendo referencia a la Ley Núm. 3 de 1978, Ley de Gasolina):

> En el 1978, la Asamblea Legislativa aprobó
> legislación dirigida **a proteger a los detallistas
> de gasolina de posibles prácticas predadoras de
> parte de compañías mayoristas distribuidora de
> gasolina**. Una de esas leyes, la Ley Núm. 3...
> dispuso que **ninguna compañía mayorista podía
> operar directamente estaciones de gasolina**,
> sujeto a determinadas excepciones. **La
> responsabilidad para vigilar por el cumplimiento
> de esta ley fue asignada al Secretario de
> Justicia a través de su Oficina de Asuntos
> Monopolísticos**. (Énfasis suplido.)[27]

Como puede verse, en la Exposición de Motivos de la

Ley Núm. 157, la Asamblea Legislativa mencionó la Ley de

Gasolina entre aquellas cuya intención es "proteger a los

detallistas de gasolina de posibles **prácticas predadoras de

parte de compañías mayoristas distribuidoras de gasolina**".

(Énfasis suplido.)[28] Además, señaló que la Ley de Gasolina

"dispuso que ninguna compañía mayorista podía operar

directamente estaciones de gasolina, sujeto a determinadas

excepciones".[29] De manera que la Ley Núm. 157, en su

Exposición de Motivos reconoció como una práctica

depredadora, esto es, dañina a los detallistas y prohibida

por la Ley de Gasolina, aquella en la cual el mayorista

operaba directamente una estación de gasolina. Señalaba,

además, que la fiscalización de esa prohibición era un

---

[27] Véase la Exposición de Motivos de la Ley Núm. 157 de 21 de agosto de 1996 (Ley Núm. 157).

[28] Exposición de Motivos de la Ley Núm. 157, *supra*.

[29] Íd.

asunto a ser trabajado por la **Oficina de Asuntos Monopolísticos.**

Por otro lado, en su último párrafo, la Exposición de Motivos de la Ley Núm. 157 también señala como su propósito el enmendar la Ley de Gasolina a los efectos de que se establezca la completa separación entre las operaciones de ventas al detal y las de mayoristas y refinadores de gasolina. El texto mencionado lee así:

> Con la presente medida se pretende cerrar las brechas de excepción que, por quedar abiertas en 1978, han limitado el logro de los objetivos públicos en esta industria. **En específico, se establece la completa separación entre las operaciones de ventas al detal y las de mayoristas y refinadores de gasolina, disponiéndose un plazo para que se lleven a efectos las desvinculaciones necesarias hasta lograrlos.** (Énfasis suplido.)[30]

Como parte de las enmiendas realizadas a la Ley de Gasolina dirigidas a establecer esa "completa separación entre las operaciones" de detallistas y mayoristas, la Ley Núm. 157 creó el mencionado Art. 4A, que prohíbe todo acto que impida la llamada "desvinculación operacional". La definición de "desvinculación operacional", que la propia Ley Núm. 157 también estableció como una de las enmiendas a la Ley de Gasolina, *supra*, señala que ésta "ocurre cuando un... distribuidor mayorista cesa de participar en forma directa en la operación y/o actividades de intercambio

---

[30] Véase la Exposición de Motivos de la Ley Núm. 157.

comercial de la venta al detal de gasolina... en las estaciones de venta al detal".[31]

Ahora bien, la enmienda al Art. 8 de la Ley de Gasolina, *supra*, producida por la Ley Núm. 157 cambió la mayoría de los artículos a los que hacía referencia la versión del artículo original. La versión del Art. 8 después de la enmienda de la Ley Núm. 157 pasó a ser la siguiente:

> Cualquier violación a los Artículos 1, 2, 3, 4 y 5 constituirá una práctica o acto injusto o engañoso y estará sujeto a las disposiciones del Artículo 3 de la Ley Núm. 77 de 25 de junio de 1964, según enmendada.

Al analizar el texto anterior tenemos que concluir que la referida enmienda al Art. 8 producida por la Ley Núm. 157 produjo cambios ilógicos en unos casos e inconsecuentes en otros. Nos explicamos. En primer lugar, no guarda relación alguna con la lógica el que una ley en cuya Exposición de Motivos se señala que su propósito es enmendar la Ley de Gasolina para establecer una completa separación entre las operaciones de ventas al detal y las de mayoristas, evitando así "posibles prácticas predadoras [monopolísticas] de parte de compañías mayoristas distribuidoras de gasolina"; que crea el Art. 4A de "desvinculación operacional" para esos fines, y que

---

[31] 23 L.P.R.A. sec. 1101(j).

reconoce que la fiscalización de tal cumplimiento descansa en el *expertise* de la O.A.M., no incluya el Art. 4A como parte de la enmienda al mencionado Art. 8 de la Ley de Gasolina, *supra*.

Por otro lado, la enmienda al Art. 8 de la Ley de Gasolina, *supra*, que introdujo la Ley Núm. 157 también incluyó, como "práctica o acto injusto o engañoso", cualquier violación al Art. 1 de la Ley de Gasolina, *supra*, 23 L.P.R.A. sec. 1101. Sin embargo, el Art. 1 de la Ley de Gasolina, *supra*, solo establecía en ese entonces –y establece actualmente– una serie de definiciones de términos, ninguno de los cuales constituye una prohibición *per se.* Por lo tanto, nadie podía cometer una violación al Art. 1 de la Ley de Gasolina, *supra*, pues tal artículo no prohibía ni prohíbe cosa alguna.

Por último, lo mismo ocurría con el Art. 3 de la Ley de Gasolina, *supra*, 23 L.P.R.A. sec. 1103. Tal artículo establecía en aquel momento –y permanece igual al presente– la creación del "Comité Interagencial sobre la Industria de la Gasolina". Como ocurría con el Art. 1 ("Definiciones"), el Art. 3 no instituía prohibición alguna, por lo que la inclusión de ese artículo en la enumeración establecida por la enmienda de la Ley Núm. 157 al Art. 8 de la Ley de Gasolina, *supra*, resultaba totalmente inconsecuente.

Siendo así, la pregunta que procede es a qué obedeció la redacción y aprobación final del Art. 8 de la Ley de Gasolina, *supra*, después de la enmienda integrada por la

Ley Núm. 157. Aunque el historial legislativo no nos arroja demasiada luz al respecto, sí encontramos que la primera versión de enmienda a este artículo (que se presentó en el Proyecto de Ley de la Cámara de Representantes) señalaba que constituiría una práctica o acto injusto o engañoso "[c]ualquier violación a los Artículos 2, 4, **4A**, 5, *5A*, 6, *6A*, y 7". (Itálicas en el original y énfasis suplido.)[32]

Por otro lado, al codificarse la versión de la segunda y última enmienda que sufriera este artículo mediante la Ley Núm. 74 de 25 de agosto de 2005, se señala en su historial la siguiente nota de codificación:

> La ley enmendadora de 1996 parece haberse referido a los arts. 1, 2, 3, 4 y 5 de la propia ley en vez de los artículos enmendados o adicionados por la misma, a saber: arts. 1, 2, 4A, 5A y 8, o sea, secs. 1101, 1102, 1104a, 1105a y 1108 de este título. **Sin embargo, por tener semejanza al contenido de las secciones referidas originalmente en la ley de 1978, pudiera ser que la ley de 1996 intentó referirse a los arts. 4, 4A, 5 y 5A de la ley, secs. 1104, 1104a, 1105 y 1105a de este título.** (Énfasis suplido.)

Al considerar todo lo anterior, no nos cabe duda de que la versión del Art. 8 de la Ley de Gasolina, *supra*, que surgió como resultado de la enmienda realizada por la Ley Núm. 157 fue el producto de un error probablemente tipográfico, que no reflejaba la intención o voluntad del legislador. Como sugiere la nota de codificación del

---

[32] Véase P. de la C. 2288 de 30 de enero de 1996, 7ma Sesión Ordinaria, 12 Asamblea Legislativa, pág. 7.

historial de este artículo, entendemos que la intención de la Ley Núm. 157 era incluir los Arts. 4, 4A, 5 y 5A en la versión del Art. 8 de la Ley de Gasolina, *supra*, y su exclusión responde a un mero error administrativo ("clerical error").

Determinamos lo anterior, considerando la norma de hermenéutica jurídica que reiteramos en <u>Passalacqua v. Mun. de San Juan</u>, 116 D.P.R. 618, 623 (1985), en donde señalamos lo siguiente:

> En *Roig Commercial Bank* v. *Buscaglia, Tes.*, 74 D.P.R. 986, 998 (1953), este Tribunal determinó que si una palabra, frase o disposición ha sido aprobada por inadvertencia o error, **especialmente si es contraria al resto de la ley o limitaría la efectividad de ésta, se puede eliminar. Entendemos que bajo las mismas circunstancias se puede añadir una frase o palabras, para que se pueda cumplir con la intención legislativa.** (Énfasis suplido.)

De manera que, siendo consistentes con lo que ha sido nuestra pauta en materia de interpretación jurídica al confrontar situaciones en una ley como la del caso de autos, determinamos que el legislador tuvo la intención de que el Art. 4A formara parte de los enumerados en el Art. 8 de la Ley de Gasolina, *supra*, desde la aprobación de la Ley Núm. 157; así debe interpretarse.

Para finalizar el análisis de los artículos de la Ley de Gasolina que son necesarios considerar para la resolución del caso de autos, tenemos que referirnos al

Art. 7, de la mencionada ley, 23 L.P.R.A. sec. 1107. Dicho artículo dispone lo siguiente:

### § 1107 Obligación del detallista

Ninguna persona natural o jurídica **que opere una estación de servicio de venta al detal** podrá, a sabiendas, solicitar o inducir la concesión, o rebaja en precios o en la renta de equipos y rótulos, en violación a las secs. 1104 y 1105 de este título. (Énfasis suplido.)

Como surge claramente de su texto -incluso desde el título-, este artículo se dirige <u>únicamente</u> al vendedor al detal de combustible, prohibiéndole el que, a sabiendas, induzca o le solicite a un productor o distribuidor-mayorista (entre otros) la concesión o rebaja en precios o en la renta de equipos y rótulos, en violación a los Artículos 4 y 5 de la Ley de Gasolina. En otras palabras, el objeto de prohibición es aquel <u>detallista</u> que pretende solicitar o inducir a un productor o distribuidor-mayorista a que le provea precios distintos en la gasolina o los combustibles especiales, que los que provee a otros detallistas, esto, en violación al Art. 4 de la Ley de Gasolina, *supra*. De igual manera, el artículo está dirigido únicamente a aquel <u>detallista</u> que solicite o induzca al productor o distribuidor-mayorista (entre otros) a que le provea una renta distinta de equipos y rótulos que aquella que se le provee a otros detallistas, esto, en violación al Art. 5 de la Ley de Gasolina.

**B. Ley de Monopolios**

Las leyes monopolísticas, así como aquellas que pretenden establecer la justa competencia y que establecen restricciones al comercio, constituyen estatutos que precisan extremo cuidado tanto en su legislación como en su interpretación jurídica. El objetivo que inspira este tipo de estatuto está fundamentado en intereses apremiantes y, como tal, indispensables para la economía de la jurisdicción en la que se aplican.

Así, en Colón Cabrera v. Caribbean Petroleum,[33] expresamos con relación a nuestra Ley de Monopolios que, "considerando que se trata de un asunto que incide sobre los cimientos de nuestra sociedad democrática, entendemos que los propósitos que subyacen dicha legislación son de la más alta jerarquía y constituyen un interés apremiante del Estado".

El propósito principal de este tipo de estatuto yace en el principio económico fundamental que dispone la preservación de la libertad de competencia y el entorpecimiento de toda práctica que perjudique el desarrollo de los distintos mercados. Por lo tanto, tales estatutos tienen como objetivo la erradicación de los actos abusivos, desleales y monopolísticos que tiendan a limitar

---

[33] 170 D.P.R. 582, 595 (2007).

la actividad mercantil, favoreciendo así la libre y abierta competencia en los mercados.[34]

En Puerto Rico, la Ley de Monopolios, *supra*, fue redactada tomando como base dos estatutos federales: la Ley Sherman[35] y la Ley Clayton.[36] De hecho, este también es el patrón en la mayoría de los estados de la Unión que también cuentan con estatutos que regulan de alguna manera la competencia, los monopolios y las restricciones al comercio, y que contienen disposiciones comparables con las de las leyes federales antimonopolísticas.

Nuestra Ley de Monopolios fue promulgada "para asegurarle al Pueblo en general, y a los pequeños comerciantes en particular, los beneficios de la libre competencia".[37]   Como señalamos en Colón Cabrera v. Caribbean Petroleum, *supra*, el propósito de la Ley de Monopolios es

> ... evitar la confabulación entre firmas para dominar el mercado, [el] acaparamiento de materias primas, [los] aumentos indebidos en los precios resultantes de una posición monopolística, [las] prácticas discriminatorias en las relaciones con clientes [y la] concentración extrema de la actividad económica y

---

[34] J. von Kalinowski, Antitrust Laws and Trade Regulation, Sec. 1.02, Second ed. (2004).

[35] 15 U.S.C.A. sec. 1 *et seq.*

[36] 15 U.S.C.A. sec. 12 *et seq.*; P.R. Fuels, Inc. v. Empire Gas Co., Inc., 149 D.P.R. 691, 706-707 (1999).

[37] G.G. & Supp. Corp v. S.& F. Systs.,Inc., 153 D.P.R. 861, 869 (2001).

de la riqueza en algunos grandes consorcios de empresas.

Ahora bien, en cuanto a la controversia que nos ocupa, es necesario considerar en específico los Arts. 3(a) y 12(a) de la Ley de Monopolios.

### C. *El Art. 3(a) de la Ley de Monopolios*

En lo pertinente, el Art. 3(a) de la Ley de Monopolios[38] establece que serán ilegales "[l]os métodos injustos de competencia, así como las **prácticas o actos injustos o engañosos** en los negocios o el comercio". (Énfasis suplido.) Así también el inciso (c) de este artículo establece lo siguiente:

> (c) Sin menoscabo de la facultad de recurrir a los medios autorizados por la sec. 269 de este título [*injuctions*], la Oficina de Asuntos Monopolísticos podrá radicar (sic) y tramitar querellas administrativas en el Departamento de Asuntos del Consumidor para prevenir, evitar y detener las violaciones al inciso (a) de esta sección o los reglamentos aprobados de conformidad al inciso (b) de la misma.[39]

Distinto a otras disposiciones de la Ley de Monopolios, el Art. 3 tuvo su base en la Sec. 5(a)(1) de la ley que creó la Comisión Federal de Comercio (15 U.S.C. sec. 45), la cual -al igual que el Art. 3(a)- declara

---

[38] 10 L.P.R.A. sec. 259(a).

[39] 10 L.P.R.A. sec. 259(c).

ilegales los métodos injustos de competencia y los actos o prácticas injustas o engañosas que afectan el comercio.[40]

Por otra parte, el inciso (c) del Art. 3 de la Ley de Gasolina, 23 L.P.R.A. sec. 259(c), faculta expresamente a la Oficina de Asuntos Monopolísticos del Departamento de Justicia a actuar como ente fiscalizador ante el D.A.Co. en cuanto a toda violación por "métodos injustos de competencia, así como las prácticas o actos injustos o engañosos en los negocios o el comercio". La Oficina de Asuntos Monopolísticos fue creada por el Art. 16 del mencionado estatuto para implementar el propósito que lo inspira.[41] La O.A.M. es una entidad adscrita al Departamento de Justicia, con facultades para la administración de la legislación sobre prácticas monopolísticas, así como para la fiscalización de éstas. Además, posee la facultad de promulgar reglamentos y proscribir actuaciones que constituyan métodos injustos de competencia y prácticas o actos injustos o engañosos en los negocios o el comercio.[42] En fin, la O.A.M. es una entidad creada con una delegación de poderes amplios que le permite al Estado contar con los instrumentos investigativos precisos para cumplir con el

---

[40] Diario de Sesiones del Senado de Puerto Rico de 22 de mayo de 1964, pág. 1706.

[41] Art. 16(a) de la Ley de Monopolios, 23 L.P.R.A. sec. 272(a).

[42] 10 L.P.R.A. sec. 259(b).

propósito fiscalizador de la Ley de Monopolios.[43] No existe duda de que, conforme al Art. 3 de la Ley de Monopolios, *supra*, es la O.A.M. el organismo gubernamental con el deber ministerial de fiscalizar y velar por el cumplimiento de esa ley.

Ahora bien, nótese que el Art. 3 de la Ley de Monopolios, *supra*, **no** le confiere poderes adjudicativos a la O.A.M. Esto es, no es a la O.A.M. a la cual le corresponde adjudicar la controversia, sino investigar y presentar la causa de acción. El inciso (c) del Art. 3 de la Ley de Monopolios, *supra*, dispone no sólo que es ante el D.A.Co. que la O.A.M. podrá presentar y tramitar querellas buscando prevenir, evitar y detener las violaciones al inciso (a) del propio artículo, sino que en el resto del artículo se establece todo un esquema procesal y apelativo que deberá seguirse ante esa agencia y del cual mencionaremos algunos detalles.

Así, el inciso (c) del Art. 3 de la Ley de Monopolios, *supra*, establece que una vez la parte querellada haya sido notificada de la querella en su contra, el D.A.Co. deberá celebrar una vista y resolver la controversia entre las partes, otorgando el remedio más adecuado tan pronto le sea posible.[44] Mientras, el inciso (d) establece que la O.A.M.

---

[43] Colón Cabrera v. Caribbean Petroleum, *supra*, pág. 594.

[44] 23 L.P.R.A. sec. 259(c).

tendrá un término de treinta días para recurrir en revisión de la decisión del D.A.Co. al Tribunal de Primera Instancia, si esta le fuera adversa.[45] Por su parte, el inciso (e) establece la forma en que se formalizará tal recurso de revisión ante el Tribunal de Primera Instancia, del cual se tendrá que notificar a la parte querellada y al D.A.Co., que contará con un término de quince días para solicitar intervención.[46]

El inciso (g) establece que el Tribunal de Primera Instancia revisará la decisión del D.A.Co. a base del récord administrativo que se sometió ante la agencia y sólo en cuanto a las conclusiones de derecho. **Además, las determinaciones de hecho del D.A.Co. "serán concluyentes para el tribunal si estuvieren sostenidas por evidencia sustancial".**[47]

Es evidente que, por la referencia directa a esa agencia, por el procedimiento tan detallado establecido ante ésta y considerando la naturaleza de la causas de acción que intrincan las controversias monopolísticas -sobre todo ante alegaciones de prácticas o actos injustos o engañosos- el legislador decidió que fuera el D.A.Co. el

---

[45] 23 L.P.R.A. sec. 259(d).

[46] 23 L.P.R.A. sec. 259(e).

[47] 23 L.P.R.A. sec. 259(g).

que tuviera la jurisdicción primaria exclusiva para tramitar y adjudicar toda querella presentada por la O.A.M.

La jurisdicción primaria exclusiva de D.A.Co. en este asunto se confirma, además, mediante la propia Ley Orgánica del Departamento de Asuntos del Consumidor, Ley Núm. 5 de 23 de abril de 1973, según enmendada,[48] la cual en su Art. 6(x) incluye entre los poderes y facultades que ejercerá el Secretario de Asuntos del Consumidor el "[a]djudicar las querellas que la Oficina de Asuntos Monopolísticos del Departamento de Justicia, radique (sic) y procese en virtud de lo dispuesto en la sec. 259 [Art. 3] del Título 10".[49] Como vemos, en armonía con el Art. 3(c) de la Ley de Monopolios, el inciso (x) del Art. 6 de la Ley Orgánica de D.A.Co. le confiere jurisdicción a esa agencia para adjudicar las querellas que le presente la O.A.M. al amparo del Art. 3 de la Ley de Monopolios.

En conclusión, es al Departamento de Justicia a través de la O.A.M. al que, conforme al mandato legislativo, corresponde fiscalizar directamente las infracciones a la Ley de Monopolios, específicamente en lo concerniente a las violaciones a las disposiciones de prácticas injustas de comercio, incluyendo toda práctica o acto injusto o engañoso. Además, concluimos que, en virtud del Art. 3 de

---

[48] 3 L.P.R.A. sec. 341e(x).

[49] Íd.

la Ley de Monopolios, *supra*, es al D.A.Co. al que corresponde la jurisdicción primaria exclusiva en toda causa de acción antimonopolística emprendida por la O.A.M., cuya causa de acción esté basada en alguna práctica o acto injusto o engañoso.

### D. El Art. 12(a) de la Ley de Monopolios

Como ya hemos establecido, una infracción a la prohibición de vinculación operacional que estatuye el Art. 4A de la Ley de Gasolina, *supra*, constituye una "práctica o acto injusto o engañoso", acción que estaría sujeta a las disposiciones de nuestra Ley de Monopolios, conforme al Art. 8 de la Ley de Gasolina, *supra*. De manera que corresponde entonces, ante la alegación de una violación a la disposición que exige tal "desvinculación operacional", remitirse a aquellos artículos de la Ley de Monopolios que versan sobre las "prácticas o actos injustos o engañosos" al comercio, a los fines de resolver cualquier interrogante sobre esta materia. Ya hemos analizado el Art. 3 de la Ley de Monopolios, *supra*, por lo que nos resta discutir el Art. 12 del mencionado estatuto, específicamente el inciso (a), el cual dispone:

> **§ 268 Demandas por personas perjudicadas**
>
> (a) Cualquier persona que sea perjudicada en sus negocios o propiedades por otra persona, por razón de actos, o intentos de actos, prohibidos o declarados ilegales por las disposiciones de este capítulo, **salvo las de las secs. 259** y 261 de este título, puede demandar a causa de dichos actos ante el Tribunal de Primera Instancia y tendrá derecho a recobrar tres (3) veces el importe de los daños y perjuicios que haya sufrido, más las costas del procedimiento y una

suma razonable para honorarios de abogado.[50]
(Énfasis suplido.)

El Art. 12(a) de la Ley de Monopolios, *supra*, establece el llamado remedio de triple daño para toda persona que sufra daños como consecuencia de actos antimonopolísticos. La acción judicial para recobrar tales daños deberá iniciarse dentro del término de cuatro años, contados a partir del nacimiento de la causa de acción.[51] Ahora bien, **es claro del texto de este inciso (a) del Art. 12 de la Ley de Monopolios, *supra*, que, sin distinción alguna, éste exceptúa de su ámbito jurisdiccional toda causa de acción que se pretenda o se tenga que iniciar al amparo de la sec. 259 de la propia Ley de Monopolios. O sea, toda causa de acción por prácticas o actos injustos o engañosos.**

### III

En el presente caso no albergamos dudas con relación a que una persona privada, ya sea natural o jurídica, carece de legitimación activa para presentar una causa de acción contra un distribuidor-mayorista por alegada violación al Art. 4A de la Ley de Gasolina, *supra*. Así surge claramente de cada estatuto concernido. Veamos.

---

[50] 10 L.P.R.A. sec. 268(a).

[51] 10 L.P.R.A. sec. 268(c).

El Art. 8 de la Ley de Gasolina, *supra*, establece como una "práctica o acto injusto [o] engañoso" cualquier violación al Art. 4A de la mencionada ley y señala que tal violación "estará sujet[a] a las disposiciones de las secs. 257 et seq. del Título 10", o sea, a la sección 257 "y las siguientes" de la Ley de Monopolios.

Por su parte, el Art. 3(a) de la Ley de Monopolios (sec. 259(a)) declara como ilegal "las prácticas o actos injustos o engañosos", que es precisamente la conducta descrita y remitida ante el ámbito de esa ley por el Art. 8 de la Ley de Gasolina, *supra*. Nótese, entonces, que existe una clara identificación o concordancia en el lenguaje utilizado en ambas disposiciones. De manera que, por el lenguaje claro de ambos estatutos –Ley de Gasolina y Ley de Monopolios– es evidente que el legislador dispuso, a través del Art. 8 de la Ley de Gasolina, *supra*, el que toda violación al Art. 4A de esa ley fuera comprendida, cubierta o estuviera bajo el ámbito jurisdiccional del Art. 3 de la Ley de Monopolios, *supra*.

Una vez determinamos que la conducta prohibida por el Art. 4A de la Ley de Gasolina, *supra*, se encuentra bajo el ámbito jurisdiccional del Art. 3 de la Ley de Monopolios (sec. 259), nos enfrentamos al Art. 12(a) de la Ley de Monopolios, *supra*, que, a su vez, exceptúa expresamente de su ámbito jurisdiccional toda acción que se presente al amparo de la sección 259. Por lo tanto, cualquier persona privada que sufra daños por actuaciones prohibidas por la

Ley de Monopolios cuenta con un remedio de triple daño al amparo del Art. 12(a) de la Ley de Monopolios, *supra*, **excepto que su causa de acción se fundamente en el Art. 3 de la Ley de Monopolios (sec. 259).**[52] Siendo así, evidentemente **toda causa de acción al amparo del Art. 4A de la Ley de Gasolina,** *supra*, **se encuentra excluida de la posibilidad del remedio de triple daño que provee el Art. 12(a) de la Ley de Monopolios,** *supra*.

En este contexto, Esso argumenta que erró el foro de instancia al no desestimar, al amparo de la Regla 10.2 de Procedimiento Civil, la reclamación de las recurridas fundamentada en el Art. 4A de la Ley de Gasolina.[53] Le asiste la razón. La Regla 10.2 de Procedimiento Civil de 1979, 32 L.P.R.A. Ap. V, R. 10.2, establece unas defensas privilegiadas que, como tal, pueden presentarse en cualquier momento del proceso.[54] Es decir, tales defensas no se pierden si no se levantan en la contestación de la demanda o antes. Entre esas defensas privilegiadas, la Regla 10.2 incluye la falta de jurisdicción sobre la materia.[55]

---

[52] El Art. 12(a) también incluye dentro de dicha excepción la sec. 261.

[53] Véase Alegato de la parte peticionaria, pág. 15.

[54] R. Hernández Colón, <u>Práctica Jurídica de Puerto Rico: Derecho Procesal Civil</u>, 4ta ed., San Juan, Ed. Lexisnexis, 2007, sec. 2601, pág. 234.

[55] La nueva Regla 10.8(c) de Procedimiento Civil, 32 L.P.R.A. Ap. V, R. 11.3, señala que "[s]iempre que surja, por indicación de las partes o

Recientemente, en <u>González v. Mayagüez Resort & Casino</u>, 176 D.P.R. 848, 855 (2009), reiteramos nuestra pauta en el sentido de que la ausencia de jurisdicción sobre la materia

> (1) no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente conferírsela a un tribunal como tampoco puede éste abrogársela [sic]; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso; y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal *motu proprio.*

Por otro lado, una parte demandante posee legitimación activa si cumple con los siguientes requisitos: "(1) ha sufrido un daño claro y palpable; (2) el referido daño es real, inmediato y preciso, y no abstracto o hipotético; (3) existe conexión entre el daño sufrido y la causa de acción ejercitada; y (4) **la causa de acción surge bajo el palio de la Constitución o de una ley**".[56] (Énfasis suplido.) Considerando entonces que, como hemos establecido, una persona privada no puede presentar una causa de acción por alegada violación al Art. 4A de la Ley de Gasolina, *supra*, las recurridas carecen de una causa de acción que surja bajo el palio de una ley. Siendo así, el foro de instancia

_____

de algún otro modo, que el tribunal carece de jurisdicción sobre la materia, éste desestimará el pleito".
[56] <u>Col. Peritos Elec. v. A. E. E.</u>, 150 D.P.R. 327, 331 (2000). Véase, además, <u>Hernández Torres v. Gobernador</u>, 129 D.P.R. 824, 835 (1992).

ciertamente carecía de jurisdicción sobre la materia para atender tal causa de acción y debió desestimarla, conforme a la Regla 10.2 de Procedimiento Civil de 1979, *supra*.

De otra parte, recientemente establecimos en SLG Semidey Vázquez v. ASIFAL, 177 D.P.R. 657, 676 (2009), que "[s]i [un] estatuto le confiere la jurisdicción al organismo administrativo se trata de una jurisdicción estatutaria (exclusiva)".[57] Allí también pautamos lo siguiente:

> El concepto jurisdicción estatutaria o exclusiva guarda relación con la jurisdicción primaria concurrente pero es distinto en cuanto a su alcance y naturaleza. En la jurisdicción exclusiva se trata de situaciones en que no aplica la doctrina de jurisdicción primaria concurrente porque la propia ley aclara que esta última no existe. Es decir, el propio estatuto establece una jurisdicción exclusiva. En tales casos estamos frente a un mandato legislativo. De ahí, que cuando un estatuto le confiere de manera expresa la jurisdicción a un órgano administrativo sobre determinado tipo de asuntos, los tribunales no tendrán autoridad para dilucidar el caso en primera instancia. Claro está, la jurisdicción primaria exclusiva no soslaya la revisión judicial posterior de la decisión del organismo. (Citas y énfasis omitidos.) [58]

Al observar la manera expresa, amplia y detallada con la que el legislador se manifestó, determinamos que, con excepción de los remedios autorizados por la sec. 269

---

[57] Véase, además, D. Fernández, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, 2da ed., Colombia, Forum, 2001, sec. 8.3, pág. 437 esc. 1.

[58] SLG Semidey Vázquez v. ASIFAL, 177 D.P.R. 657, 677 (2009).

(injctions), el Art. 3 de la Ley de Monopolios, *supra*, le confiere jurisdicción primaria exclusiva al D.A.Co. en la dilucidación de cualquier violación al inciso (a) del propio artículo, esto es, la utilización de métodos injustos de competencia y prácticas o actos injustos o engañosos en los negocios o el comercio.

En cuanto a la determinación del tribunal de instancia en el sentido de que "un ente privado como la demandante puede presentar una causa de acción al amparo del Artículo 7 de la Ley de Control de Gasolina", por lo que ya explicamos determinamos que la misma es claramente errónea. El Art. 7 de la Ley de Gasolina, *supra*, provee para una causa de acción en contra de los detallistas y no a favor de éstos. De otra parte, además de que la interpretación de tal estatuto por parte del foro primario no fue la correcta, lo cierto es que las recurridas nunca reclamaron una causa de acción al amparo del Art. 7 de la Ley de Gasolina, sino del Art. 7 de la Ley de Monopolios, *supra*.[59]

Ahora bien, con relación a que la causa de acción de las recurridas pueda ser resarcida como un remedio sencillo u ordinario de daños y perjuicios al amparo del Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141, nada encontramos en la ley que lo impida; al contrario. Como bien señala la

---

[59] Véase la demanda instada por los recurridos. Apéndice de la Petición de *certiorari*, págs. 79-84.

Procuradora General en su comparecencia especial, surge de la discusión reseñada en el historial legislativo con relación a los informes camerales que originaron la Ley de Monopolios, lo siguiente:

> En cuanto a las acciones de los particulares, por triple daño, estas no se autorizan con respecto a los actos prohibidos por el Artículo 3, **sin que por ello se intente afectar el derecho a entablar una acción ordinaria de daños y perjuicios, si ésta procediere conforme al Código Civil u otros principios de ley**. (Énfasis suplido.)[60]

Como vemos, las expresiones del legislador fueron claras. La Asamblea Legislativa no tuvo la intención de que una causa de acción como la del caso de autos no pudiera ser resarcida como un remedio sencillo u ordinario de daños y perjuicios al amparo del Art. 1802 del Código Civil, *supra*. Todo lo contrario.

Por último, al final de su alegato las recurridas argumentan que la causa de acción en este litigio comprende hechos ocurridos durante los años 2000 al 2005, periodo de tiempo en el que el Art. 8 de la Ley de Gasolina, *supra*, no había sido enmendado para incluir el Art. 4A. Por esto, las recurridas concluyen que en vista de que tal enmienda ocurrió con posterioridad a la presentación de su causa de acción, ésta -la enmienda de 2005- tendría un efecto retroactivo en violación al Art. 3 de nuestro Código

---

[60] Diario de Sesiones de la Cámara de Representantes, 22 de mayo de 1964, pág. 1708.

Civil.[61] No les asiste la razón.

En primer lugar, ya hemos determinado basado en el análisis del artículo enmendando y del historial legislativo de la Ley Núm. 157, *supra*, que la intención de la Asamblea Legislativa fue que el Art. 4A de la Ley de Gasolina, *supra*, estuviera incluido bajo el ámbito jurisdiccional del Art. 8 de la propia Ley, desde la enmienda de 1996. Así lo interpretamos.

Pero, además, si aceptáramos la proposición de las recurridas en el sentido de que el Art. 8 de la Ley de Gasolina, *supra*, no incluía bajo su ámbito jurisdiccional el Art. 4A para el año en que estos instaron su causa de acción, tendríamos que resolver de todos modos que la enmienda de 2005 no constituiría una enmienda con efecto retroactivo. Nos explicamos.

La inclusión del Art. 4A de la Ley de Gasolina, *supra,* al ámbito jurisdiccional del Art. 8 de la Ley de Gasolina, *supra*, mediante la enmienda de 2005, constituyó un cambio en el aspecto jurisdiccional de este artículo. Esto es, desde la enmienda de 2005 toda causa de acción al amparo del Art. 4A de Ley de Gasolina, *supra*, se encuentra comprendida bajo el ámbito jurisdiccional del Art. 3 de la

---

[61] El Art. 3 del Código Civil establece lo siguiente:

Las leyes no tendrán efecto retroactivo, si no dispusieran lo contrario. En ningún caso podrá el efecto retroactivo de una ley perjudicar los derechos adquiridos al amparo de una legislación anterior. 31 L.P.R.A. sec. 3.

Ley de Monopolios, *supra* (sec. 259). Siendo así, la enmienda de 2005 en efecto produjo que ya no se pueden ejercer causas de acción privadas al amparo de este artículo y que es D.A.Co. el que adviene a tener jurisdicción primaria exclusiva.

Desde el 1905, esta Curia resolvió, interpretando el Art. 3 del Código Civil, *supra*, que:

> ... es un principio de derecho español, que **los estatutos que regulan la jurisdicción y el procedimiento, son de interés público, y empiezan a regir retroactivamente**, o más bien, que no son consideradas como retroactivas en tal sentido, que caigan bajo las restricciones de este artículo. (Énfasis suplido.)[62]

Así también, en <u>Texas Co. v. Sancho Bonet, Tes.</u>, 52 D.P.R. 658, 667(1938), señalamos que:

> ... como se dice en 59 Corpus Juris 1173, resumiendo la jurisprudencia, "... La regla general de que los estatutos sólo se interpretarán prospectivamente (prospectively) y no retrospectiva o retroactivamente, **de ordinario no es aplicable a estatutos que afectan el remedio o procedimiento, o, conforme se dice de otro modo, esa regla general está sujeta a una excepción cuando se trata de un estatuto relativo al remedio o procedimiento".** (Énfasis suplido.)

De manera que, considerando que la enmienda producida por la Ley Núm. 74 de 25 de agosto de 2005 al Art. 8 de la Ley de Gasolina, *supra*, tuvo claramente un efecto sobre los procesos y la jurisdicción del tribunal de instancia en causas de acción al amparo del Art. 4A de la Ley de

---

[62] <u>American Railroad Co. of P.R. v. Hernández</u>, 8 D.P.R. 516, 520 (1905).

Gasolina, *supra*, tal enmienda no constituye una retroactiva en el marco que el Art. 3 del Código Civil, *supra*, lo prohíbe.[63]

## IV

Por todo lo anterior, se revoca la Resolución emitida por el Tribunal de Apelaciones y, en consecuencia, se desestima la causa de acción fundamentada en el Art. 4A de la Ley de Gasolina, *supra*, ante el Tribunal de Primera Instancia, por falta de jurisdicción.

Se dictará sentencia de conformidad.

Erick V. Kolthoff Caraballo
Juez Asociado

---

[63] J.R.T. v. A.E.E. 133 D.P.R. 1, 13, (1993). Véase, además, Texas Co. v. Sancho Bonet, Tes., 52 D.P.R. 658, 667 (1938); R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e intepretación de las leyes en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1987, Vol. I, Cap. 63.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Aguadilla Paint Center, Inc.;
CB Gasoline Service Group;
Micada de Puerto Rico, Inc.

    Recurridos

      v.                    CC-2010-1135     Certiorari

Esso Standard Oil Company,
(Puerto Rico)

    Peticionario


SENTENCIA


San Juan, Puerto Rico, a 15 de diciembre de 2011.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se revoca la Resolución emitida por el Tribunal de Apelaciones y, en consecuencia, se desestima la causa de acción fundamentada en el Art. 4A de la Ley de Gasolina, Ley Núm. 3 de 21 de marzo de 1978, según enmendada, ante el Tribunal de Primera Instancia, por falta de jurisdicción.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo, Interina. El Juez Presidente señor Hernández Denton emitió Opinión Disidente a la cual se une la Juez Asociada señora Rodríguez Rodríguez.


Larissa Ortiz Modestti
Secretaria del Tribunal Supremo, Interina

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Aguadilla Paint Center, Inc.;
CB Gasoline Service Group;
Micada de Puerto Rico, Inc.

    Recurridos

     v.                        CC-2010-1135 *Certiorari*

Esso Standard Oil, Co.
(Puerto Rico)

    Peticionario

Opinión Disidente emitida por el Juez Presidente señor Hernández Denton a la cual se une la Juez Asociada señora Rodríguez Rodríguez.

San Juan, Puerto Rico, a 15 de diciembre de 2011.

Por entender que ni la Ley de Control de Productores, Refinadores y Distribuidores Mayoristas de Gasolina, Ley Núm. 3 de 21 de marzo de 1978, según enmendada, 23 L.P.R.A. secs. 1101, *et seq*. (Ley de Gasolina), ni la Ley de Monopolios y Restricción del Comercio, Ley Núm. 77 de 25 de junio de 1964, según enmendada, 10 L.P.R.A. secs. 257, *et seq*. (Ley de Monopolios), impiden que un participante del mercado presente una acción en daños por violaciones a las prohibiciones de las referidas leyes, disentimos del curso seguido por una mayoría de este Tribunal. En esencia, no podemos estar de acuerdo porque el resultado de la Opinión del Tribunal es contrario a los propósitos de los estatutos antimonopolísticos en controversia.

I.

Los demandantes, Aguadilla Paint Center, Inc., CB Gasoline Service Group y Micada de Puerto Rico, Inc., son detallistas o vendedores al detal de gasolina importada, distribuida y vendida por Esso Standard Oil (Esso). Es decir, detallistas de marca. En 2004, los detallistas presentaron una demanda contra Esso en la cual le imputaban incurrir en la práctica ilícita de vinculación operacional y discrimen de precios y descuentos, en contravención al Art. 4A de la Ley de Gasolina, 23 L.P.R.A. sec. 1104a y el Art. 7 de la Ley de Monopolios, 10 L.P.R.A. sec. 263. Asimismo, solicitaron indemnización bajo el Art. 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5141. En específico, los demandantes alegan que Esso controla la operación de las estaciones de gasolina en violación al Art. 4A, porque establece el costo de la gasolina, la cantidad de gasolina que vende, la frecuencia con la que se compra la gasolina, la entrega de la misma, el método de pago, el precio sugerido de venta y la renta de las estaciones de servicio. De otro lado, la causa de acción por violación al Art. 7 de la Ley de Monopolios se basa en que, alegadamente, Esso mantiene un discrimen de precios frente a compradores igualmente situados.

Por su parte, Esso solicitó la desestimación alegando, en esencia, que esas dos causas de acción solo pueden ser presentadas por el Departamento de Justicia. Por lo tanto, los demandantes carecían de legitimación activa.

El Tribunal de Primera Instancia proveyó no ha lugar a la moción de desestimación y el foro apelativo intermedio

mantuvo ese dictamen al no expedir el auto solicitado, por no estar en posición de intervenir en esa etapa procesal. Inconforme, Esso acude ante nos. Por su parte, los demandantes, cuyos planteamientos quedaron excluidos de la Opinión del Tribunal, argumentan que son conscientes de que existen una serie de remedios en los estatutos antes mencionados que le han sido encomendados al Departamento de Justicia. En específico, aducen que los *injunctions* preliminares y permanentes reconocidos en dichas leyes para paralizar actuaciones prohibidas son competencia exclusiva del Secretario de Justicia y es este quien tiene legitimación activa para procurarlos. Sin embargo, los demandantes no buscan interferir con esos remedios. Su única súplica es que se les permita demostrar que Esso les causó daños al violar los preceptos de ambas leyes por incurrir en prácticas de vinculación operacional y discrimen de precios. Inclusive, aunque lo solicitaron originalmente en su demanda, los demandantes sostienen ante nos que no reclaman el beneficio de triple daño, reconocido en los estatutos antimonopolísticos de Estados Unidos y Puerto Rico. De nuevo, solo quieren que se les permita demostrar cómo, al incurrir en las prácticas prohibidas por los referidos estatutos, se les causó daños que, en algunos casos, resultaron en la quiebra de negocios familiares.

II.

A. Estatutos antimonopolísticos

La Ley de Gasolina, *supra*, tiene como propósito combatir el control de los abastos de productos energéticos y eliminar

las ventajas competitivas existentes en el mercado de gasolina. Por ello, nuestra Asamblea Legislativa procuró la uniformidad competitiva e implantó prohibiciones a prácticas discriminatorias y de control de precios. Unos meses más tarde, se aprobó la Ley Núm. 73 del 23 de junio de 1978, 23 L.P.R.A. secs. 1131, *et seq*., (Ley 73), con el propósito de declarar la industria de la gasolina -en todas sus facetas- como una revestida de **interés público**.

A su vez, la Ley 73, *supra*, implantó una serie de prohibiciones sobre acuerdos de arrendamiento y subarrendamiento y otro tipo de vinculación entre mayoristas y detallistas. Además, estableció que los mayoristas están obligados a presentar ante la Oficina de Asuntos Monopolísticos (O.A.M.) del Departamento de Justicia copia de todos sus contratos con los detallistas. Asimismo, la Ley 73, *supra*, dispuso que reconocía la existencia de la Ley de Monopolios, *supra*, y que nada de lo dispuesto en la primera contravendría la segunda. Esto es, que la Asamblea Legislativa era consciente de la Ley de Monopolios, *supra,* y de su operación.

A tono con lo anterior, el Art. 4A de la Ley de Gasolina, 23 L.P.R.A. sec. 1104a, dispone que:

> Ningún… distribuidor-mayorista podrá, mediante convenio… operar directamente una estación de servicio de venta al detal de gasolina de forma que impida su completa desvinculación operacional. Ningún… distribuidor-mayorista podrá, mediante convenio… imponer, requerir, fijar o limitar directamente el margen de ganancia y/o el precio de venta al detal de la gasolina… en la estación de servicio de venta al detal.

Asimismo, el Art. 8 de la Ley de Gasolina, 23 L.P.R.A. sec. 1108, dispone que: "Cualquier violación a las secs. 1102, 1102a, 1104, **1104a**, 1105 y 1105a, de este título constituirá una práctica o acto injusto o engañoso y estará sujeto a las disposiciones de las secs. 257, *et seq.*, del Título 10." (Énfasis suplido). Esto último sobre las secs. 257, *et seq.*, del Título 10 se refiere a la Ley de Monopolios.

De otra parte, la Oficina de Asuntos Monopolísticos del Departamento de Justicia tiene a su haber una serie de remedios y facultades para fiscalizar el cumplimiento con Ley de Monopolios, *supra*. Cabe resaltar que todas las secciones de esa ley a las que la Opinión de este Tribunal hace referencia, disponen que la O.A.M. "podrá" realizar determinados actos.

Por su parte, el Art. 7 de la Ley de Monopolios dispone, en lo pertinente, que:

> Será ilegal el que cualquier persona, directa o indirectamente, discrimine en precio entre distintos compradores de cosas objeto de comercio del mismo grado y calidad, cuando dichas cosas sean vendidas para uso, consumo o reventa en Puerto Rico, y cuando el efecto de tal discrimen pueda ser el de reducir sustancialmente la competencia o tender a crear un monopolio en cualquier línea de comercio en Puerto Rico o afectar, destruir o evitar la competencia con cualquier persona que hubiese concedido o a sabiendas hubiese recibido el beneficio de tal discriminación, o con cualquier cliente de uno de éstos. 10 L.P.R.A. sec. 263.

Por último, el Art. 12 de la Ley de Monopolios, preceptúa que:

> Cualquier persona que sea perjudicada en sus negocios o propiedades por otra persona, por razón de actos o intentos de actos, prohibidos o

declarados ilegales por las disposiciones de este capítulo, salvo las de las **Secs. 259** y 261 de este título pueden demandar a causa de dichos actos ante el Tribunal de Primera Instancia y tendrá derecho a recobrar tres (3) veces el importe de los daños y perjuicios que haya sufrido, más las costas del procedimiento y una suma razonable para honorarios de abogado. 10 L.P.R.A. sec. 268. (Énfasis suplido).

Como este último artículo excluye las acciones bajo la Sec. 259, este Foro hoy concluye que no será cualquier persona la que pueda presentar esa acción, sino que será la O.A.M. la única legitimada bajo esa sección de la Ley de Monopolios, *supra*. Por ello, ordena la desestimación de las causas de acción bajo la Ley de Gasolina, *supra*, y la Ley de Monopolios, *supra*, aunque permite que el caso continúe sobre las alegaciones de daños bajo el Art. 1802 del Código Civil, *supra*.

Como veremos más adelante, ese análisis es contrario a lo expresado en Pressure Vessels P.R. v. Empire Gas P.R., 137 D.P.R. 497 (1994). Allí, establecimos el origen y los propósitos abarcadores del Art. 2 de la Ley de Monopolios, 10 L.P.R.A. sec. 258. Este busca evitar cualquier acto, contrato, o conspiración para restringir irrazonablemente los negocios o el comercio en Puerto Rico. Para ello, nuestra Asamblea Legislativa adoptó el mismo texto de la Sec. 1 del Sherman Act, 15 U.S.C. 1. *Véase*: Pressure Vessels, *supra*; Northern Pac. R. Co. v. United States, 356 U.S. 1, 4 (1958).

Además, establecimos que tanto el texto de nuestro artículo como la doctrina federal coinciden en que hay tres requisitos que se tienen que establecer para demostrar una infracción a esta disposición: (1) deberá existir algún

contrato, combinación o conspiración entre dos o más entidades, (2) el cual restringe irrazonablemente los negocios o el comercio (3) en Puerto Rico. Pressure Vessels, *supra*, pág. 509. Finalmente, en el referido caso, resolvimos que un demandante puede traer prueba para demostrar la irrazonabilidad de unos contratos a la luz de su efecto sustancialmente adverso sobre la libre competencia, ello como vehículo para probar que, "como consecuencia de la infracción de la ley, el demandante haya sufrido un daño". Íd. pág. 520.

B. Concesión de poder de reglamentación

El 23 de junio de 1978, la Asamblea Legislativa aprobó dos leyes que nos atañen frente a la actual controversia. La primera es la Ley Núm. 72, que tuvo el propósito de adicionar, al Art. 3 de la Ley de Monopolios, *supra*, una disposición "a fin de autorizar a la Oficina de Asuntos Monopolísticos a radicar y tramitar querellas por violaciones a este artículo en el Departamento de Asuntos del Consumidor", "autorizar a dicho Departamento a resolver dichas querellas e imponer las sanciones aquí dispuestas" y "establecer el trámite procesal para la revisión judicial de dichas querellas". *Véase*: Ley Núm. 72 de 23 de junio de 1978, 1978 Leyes de Puerto Rico, págs. 256-257. La exposición de motivos de esa Ley establece claramente que lo que se quiso fue "proveer un **foro adicional a los existentes** donde puedan ventilarse los actos o métodos injustos en los negocios y el comercio". Íd., pág. 257. (Énfasis suplido.)

Por su parte, la segunda ley aprobada, la Ley Núm. 73 de 23 de junio de 1978, *supra*, se estableció con el propósito de

"autorizar al Departamento de Justicia, de Comercio y de Asuntos del Consumidor, a la Junta de Planificación, la Administración de Reglamentos y Permisos y, a la Comisión de Servicio Público a adoptar e implantar la reglamentación necesaria para poner en efectos los propósitos y objetivos de esta ley". Ley Núm. 73 de 23 de junio de 1978, 1978 Leyes de Puerto Rico, pág. 259. La exposición de motivos de esta ley dispone que es "necesaria la intervención gubernamental en su ejercicio del Poder de Razón de Estado para evitar la dislocación en la integridad, funcionalidad y competencia que debe prevalecer en el mercado de la gasolina en Puerto Rico, industria vital a los mejores intereses de la ciudadanía y a la dinámica económica del país". Íd. pág. 260. Más adelante, esa misma ley proscribe en su Art. 5 que "nada de lo aquí dispuesto o promulgado por reglamento o de otra forma, conforme a las disposiciones de esta ley, será interpretado como que exceptúa de o confiere inmunidad en cuanto al aplicación de las disposiciones de la Ley Núm. 77 de 25 de junio de 1964, según enmendada". Íd. Pág. 264.

Así las cosas, la Asamblea Legislativa quiso adicionar un remedio administrativo con el propósito de allegar herramientas a la lucha antimonopolística. No obstante, nada de lo aquí dispuesto sobre las facultades y el trámite administrativo tuvo el propósito de eliminar los remedios reconocidos por la Ley de Monopolios, *supra*, como bien dispuso el Art. 5 de la Ley Núm. 73, *supra*.

Esa acción legislativa es totalmente consistente con la enmienda de 1970 a la Ley de Monopolios, *supra*. Mediante la

Ley Núm. 67 de 30 de mayo de 1970, se realizó una enmienda al Art. 3 de la Ley de Monopolios, *supra*, que dispone que "sin menoscabo de la facultad de recurrir a los remedios autorizados en el Artículo 13 [que versa sobre los remedios de *injunction*], la Oficina de Asuntos Monopolísticos, mediante reglas y reglamentos promulgados… podrá proscribir actos o prácticas específicas…". Ley Núm. 67 de 30 de mayo de 1970, 1970 Leyes de Puerto Rico, pág. 185.

Por ello, el Art. 3 de la Ley de Monopolios, *supra*, según enmendado, simplemente reconoce la facultad administrativa de reglamentar prácticas ilícitas y provee un foro ante el Departamento de Asuntos del Consumidor para examinar violaciones a los estatutos aquí discutidos.

## III.

Por los fundamentos que anteceden, disentimos del resultado de la Opinión Mayoritaria. Somos del criterio que nada en los estatutos que hemos discutido impide la legitimación activa de los demandantes y que, a pesar de que bajo el Art. 12 de la Ley de Monopolios, *supra*, se excluye el Art. 3, la acción de los demandantes en nada contraviene la delegación legislativa de poder para reglamentar, que se concede en ese Art. 3. En síntesis, se les debe permitir a los demandantes probar un caso de daños por violaciones a las disposiciones específicas de los estatutos aquí discutidos. Veamos.

La Ley de Gasolina, *supra*, fue adoptada con posterioridad a la aprobación de la Ley de Monopolios, *supra*. Asimismo, la primera expresa que la Asamblea Legislativa fue

consciente de las disposiciones de la segunda, al momento de aprobarla. La Ley de Gasolina expresa en su Art. 8 que cualquier violación a varios de sus artículos, incluyendo el Art. 4A, "constituirá una práctica o acto injusto a (sic) engañoso y estará sujeto a las disposiciones de las secs. 257, *et seq.* del Título 10". 23 L.P.R.A. sec. 1108.

Cuando acudimos a las secs. 257 y siguientes del Título 10, es decir, la Ley de Monopolios, encontramos que el Art. 12 reconoce una causa de acción a: "cualquier persona que sea perjudicada en sus negocios o propiedades por otra persona, por razón de actos, o intentos de actos, prohibidos o declarados ilegales por las disposiciones de este capítulo, salvo las de las secs. 259 y 261…" 10 L.P.R.A. sec. 268.

Cónsono con los propósitos legislativos de nuestros estatutos y de los estatutos federales en que se basa la legislación local, **esa causa de acción, es totalmente independiente del poder legislativo de reglamentar que se le confirió a las agencias administrativas mediante el Art. 3 de la Ley de Monopolios, 10 L.P.R.A. sec. 259.**

Esto es importante porque, según la Opinión del Tribunal, las prácticas violatorias del Art. 8 de la Ley de Gasolina, *supra*, sólo estarían sujetas a la acción bajo el Art. 3 de la Ley de Monopolios, que dispone que "los métodos injustos de competencia, así como las prácticas o actos injustos o engañosos en los negocios o el comercio, por la presente se declaran ilegales". 10 L.P.R.A. sec. 259. Es decir, que porque el Art. 8 de la Ley de Gasolina declara "actos injustos y engañosos" lo prohibido en dicha ley y que,

como el Art. 3 de la Ley de Monopolios es el que prohíbe los "actos injustos y engañosos" y, éste, a su vez, está excluido del Art. 12 de la Ley de Monopolios que reconoce la acción de triple daño, entonces los demandantes no tienen disponible esa causa de acción por violaciones a la Ley de Gasolina, *supra*.

Esa interpretación textualista -que propone el peticionario y que adopta completamente este Tribunal- es totalmente contraria a los propósitos de ambas leyes. Además, los artículos bajo los cuales reclaman los demandantes no deben interpretarse como los únicos artículos de esas leyes que permiten una acción en daños. Si bien esa interpretación que hace la Opinión de este Tribunal permite que los demandantes continúen con su causa de acción en daños bajo el Art. 1802 del Código Civil de Puerto Rico, *supra*, cabe preguntarnos: ¿qué alegaciones podrán presentar los demandantes para demostrar que fue la realización de prácticas prohibidas por parte del demandado la que le causaron los daños que buscan indemnizar, si se le han desestimado las causas de acción bajo la Ley de Monopolios y la Ley de Gasolina?

Somos del criterio que se pudo llegar a una interpretación distinta. Máxime ante el hecho de que la propia Opinión del Tribunal reconoce el origen directo de nuestros estatutos antimonopolísticos de sus análogos federales.

En los Estados Unidos, los "private actions" juegan un rol crítico en el régimen antimonopolístico. J. Von

Kalinowski, Antitrust Law and Trade Regulation, Sec. 160.01, 2d. ed., Vol. 8 pág. 160-2 (supl. 2011). **"In enacting the antitrust laws, the U.S. Congress was convinced that private antitrust litigation is one of the surest weapons for effective antitrust enforcement and that private suits are an important element of the Nation´s antitrust enforcement scheme… The Supreme Court has labeled the private action as a vital means of enforcing the antitrust policy of the United States and as an important weapon of antitrust enforcement."** Íd. (Citas omitidas). (Énfasis suplido).

Por ello, nuestra interpretación es que la alegada acción ilícita de los demandados podría estar prohibida por la Ley de Monopolios, *supra*, y los demandantes así podrían demostrarlo conforme a nuestra Opinión en Pressure Vessels, *supra,* que, en esencia*,* le permite a un participante del mercado reclamar daños por una actuación prohibida bajo el estatuto antimonopolístico.

De hecho, en la legislación federal, el remedio de triple daño está disponible bajo la Sec. 4 del Clayton Act. El texto de esa sección es sumamente sencillo y simplemente reconoce una causa de acción a cualquier persona afectada por razón de cualquier acto prohibido bajo una ley antimonopolística. 15 USC sec. 15. Para obtener ese remedio, el demandante sólo tiene que probar que el daño fue causado por razón de una actuación antimonopolística. J. Von Kalinowski, op. cit. sec. 161.02, pág. 161-9. ("Thus, in antitrust cases, it is not sufficient simply to demonstrate an injury, even injury directly caused by the defendant. The

injury will not be considered antitrust injury unless it was caused by reason of a violation of the antitrust laws.")(Citas omitidas.) Esto demuestra que el Congreso quiso permitirles a los participantes del mercado presentar una acción de daños por el mero hecho de otro haber realizado una práctica antimonopolística.

Por lo tanto, habríamos concluido que la demanda presentada por los recurridos podía continuar. Con su decisión, este Tribunal deja en suspenso un importante elemento de la lucha antimonopolística, en particular sobre el negocio de distribución de combustibles en Puerto Rico. Basta mirar a décadas pasadas para recordar las prácticas indeseables que sufrimos en el País durante la crisis petrolera de los años 1970´s. Hoy, de espaldas a la política pública de los Estados Unidos, a base de la cual formulamos nuestros estatutos sobre esta materia, este Tribunal ata las manos y cierra las puertas de la justicia a quienes alegan haber sufrido un daño que ahora será más difícil de demostrar.

De la normativa federal antes descrita es evidente que, desde principios del siglo pasado, el ordenamiento dispuso que los competidores jugarían un rol central en la lucha contra el control ilícito de los mercados, mediante la presentación de acciones para recuperar el daño causado por acciones monopolísticas. No vemos por qué los participantes del mercado de gasolina puertorriqueño no puedan hacer lo mismo, cuando nuestra legislación también tiene el propósito

de apoderar a los afectados con legitimación para reclamar remedios por prácticas injustas.

IV.

A modo de epílogo, la decisión de este Tribunal se emite en los momentos en que está entredicho la capacidad de la Oficina de Asuntos Monopolísticos para adelantar los propósitos legislativos. De la propia información publicada por el Departamento de Justicia sobre su presupuesto para el año fiscal en curso surge que, desde el año 2009, dicha Oficina ha perdido casi de un cuarenta por ciento de su personal, apenas cuenta con cuatro abogados en la actualidad, y, durante el mismo periodo, se le ha recortado sobre un quince por ciento de su presupuesto. *Véase:* Departamento de Justica, Presupuesto Aprobado para el año 2012, disponible en: http://www.pr.gov/presupuesto/aprobado_2012/justicia.htm.

En suma, habríamos permitido que el litigio continuara en sus méritos en vez de resolverlo sumariamente, sin permitirle al demandante establecer su caso. La desestimación de acciones privadas contra el control ilícito de los mercados en nuestra jurisdicción es contraria tanto a la intención como al espíritu de la Ley de Monopolios y la Ley de Gasolina y priva a los detallistas de gasolina un instrumento muy importante para vindicar sus derechos ante prácticas injustas de los mayoristas.

Federico Hernández Denton
Juez Presidente